Mr. Justice Wylie
delivered the opinion of the court:
“The liability of common carriers attaches from the time of their acceptance of the goods. But where goods are actually put into the wagon or barge of the carrier, he will not be chargeable if it appears there is no intention to trust him with the custody; as, if the owner is uniformly in the habit of placing Ms own servant on board as a guard, who exclusively takes upon himself the management and custody of them.” Story on Bailm., § 533, citing Hast India Co. vs. Pullem, 1 Str. R., 590; Robinson vs. Bunmore, 2 B. & P., 419; Shuffelin vs. Harvey, 6 Johns. R., 170; Marshall on Ins,, b. 1, ch. 705, which fully sustain the doctrine laid down by Story.
“ A non-delivery will also be excused by any act of the shipper which discharges the carrier from any further responsibility. As if, with the consent of the shipper, he delivers them over to another carrier, or, he deposits them at an intermediate place to await the future orders of the shippers, or, if the shipper takes them into the exclusive custody of himself or his own servants. But it will be otherwise if he merely accompanies them in their transit, not exercising any exclusive custody over them.” Ib., section 578.
In White vs. The Winnisimmet Co., 7 Cush. R., 154, the facts were these: The plaintiff drove his horse, attached to a loaded wagon, upon a ferry-boat, paying the usual toll, but declined to take the place assigned for the horse and wagon by the agent of the defendants in charge of the boat, and selected his own position, which he occupied without further objection from the agent. He did not give up the custody of the horse *102 and wagon to the defendants, nor express any desire to do so, but left the horse, which was not accustomed to ferry-boats, alone, and while thus unattended the horse became frightened, sprang against a chain, across the head of the boat, which was fastened to hooks. The hooks broke and horse and wagon went overboard, and the horse was drowned and wagon injured. The owner brought an action against the company, as owner of the boat, to recover the amount of his losses. But the court decided—
1. That the defect in the hooks was one for which the company was liable, and which, under other circumstances, might have charged it with the losses in this case, but that—
2. The plaintiff not having, himself, exercised ordinary and reasonable care and diligence in the oversight and management of the horse, and the loss being, in all probability, owing to this cause, he could not recover.
In Smith vs. New Haven and Northampton R. R. Co., 12 Allen, 531, it was held by the supreme court of Massachusetts “ that common carriers were not responsible for injuries to live stock, caused by the peculiar character and propensities of the animals.”
And in the Michigan Southern and Indiana R. R. Co. vs. Mc-Donough, a report of which we find in 5th vol. American Law Review, 178, it was held by the supreme court of Michigan “ that upon sound principle, and upon the English authorities, it was clear that the transportatiou of cattle by railroad does not come within the reasons of the law applicable to common carriers, so far as relates to the cafe of the property and responsibility .for its loss or injury,” and “that as the company did not hold itself out as insurer of live stock, it was not liable to the plaintiff in this action.”
We think these authorities are grounded in right reason, and propose to apply them to the present case.
Plaintiff was owner of four race-horses, for which he had engaged transportation from Washington to Baltimore. These horses were “in charge of Major Bacon, their trainer, who was accompanied and assisted by four boys, three of whom were race-riders for the horses, two of whom were 17 years of age, and all of them accustomed to travel with and take care of the horses.”
*103 One of these horses, the mare Australia, was injured while being put on board the ear, at the Washington depot, so that she became worthless as a race-horse, and this action was brought against the defendant to recover for the loss, alleged to be $10,000. The jury gave $8,000.
It seems there was no difficulty in getting the other three horses on the car, but the mare Australia was “ wild and high strung” and very difficult to manage.
Major Bacon with his four assistants, aided by several employes of the company, were all engaged in trying to get the mare transferred to the car, when she fell from the gangway down between the platform and the car, and received the injury in question.
There was a conflict of testimony between the witnesses for the plaintiff and those for the defendant, as to the suitableness and adequacy of the gangway which had been furnished by the defendant for the occasion, and as to who had the charge and management of the mare when the accident occurred — whether the agents of the plaintiff or those of the defendant.
After the jury had been out for some time they addressed a note to the court in the following terms:
“Hon. D. K. Cartter:
“Dear Sir: The jury in the case of Bowie vs. The Baltimore and Ohio Railroad, Company, disagree as to the question of the lawful delivery of the mare Australia into the custody of the agents of said road, and we would respectfully ask your honor to instruct us if the taking of the mare into the depot, and putting her on to the platform, was a lawful delivery of the same; and, if so, did the custody and possession remain in the defendants notwithstanding the agent of the plaintiff, or trainer, retained possession of her, and insisted upon loading her as he thought best on the occasion, after having been requested by the agent of the defendant to place her under his control.
“JOHN VAN RISWIOK:,

“Foreman.”

The record does not show whether any notice was taken by the court of this note from the jury until a second one was handed to the court, of which the following is a copy:
*104 “ Washington, D. C.
“ February 19, 1873.
“ Hon. Judge Cartter:
“We respectfully request of your honor, that, whereas, there exists some obscurity in the minds of some of the jury in the case of Bowie vs. Baltimore and Ohio Railroad Company, we be instructed what constitutes in the eye of the law the delivery and acceptance of the mare in question to the agent or agents of said railroad company, viz: Does the fact that said mare of the plaintiff was carried to and on the premises of said railroad company, as had been previously agreed upon, and placed on the platform for transportation from Washington to Baltimore by said company’s agents, and when placed on said platform efforts were made by said company’s agent or agents to load the car with said mare, constitute said delivery and acceptance by said company.
“JOHN VAN BISWICK,

“Foreman?

In response to these inquiries the chief-justice instructed the jury as follows:
1. Whether the taking of the mare on to the platform in the yard of the defendant in preparation for loading constituted a delivery so as to transfer the responsibility from the owner to the company.
If you find from the testimony that the plaintiff’s servants, under an agreement to transport the property, took it on the premises and on the platform of the defendant, where a car was found prepared and the property was delivered with the view, and received with the purpose, of shipment, that is a delivery that transferred responsibility from owner to the carrier; no words of delivery are specially necessary. If you find in the acts of parties revelations of delivery and receipt, you will conclude that delivery and receipt transpired.
2. Whether, conceding those transactions took place, the interposition of plaintiff’s servants in counteracting the economy of defendant in the mode of transferring the property to the car would exonerate defendant from its liability and place the risk on the plaintiff; whether acts of plaintiff’s servants in custody of the horses in disobeying orders of defendant’s. *105 agents in the mode of placing property on the cars would defeat the liability so as to make the plaintiff responsible for peril incurred in consequence.
For the purpose of ending the question, I will say, if you find from the testimony that delivery transpired from the owner to the defendant-and continued through the process of transferring the horses to the car, if absolute possession of the property was not retrieved, if it was not repossessed and resumed by the owner or servant, the disobedience of owner’s servants to defendant would not exonerate defendant. It was then their duty if they could not control the plaintiff’s servants to refuse to put the horses on the cars.
To which charge or instruction and every part thereof defendant by its counsel excepts.
The error of the first paragraph of this answer consists in telling the jury that a delivery of the mare on the platform preparatory to shipment would itself be sufficient to charge the defendant with liability.- In regard to inanimate chattels, that would have been a correct proposition. But that was not what the jury were troubled about. They had asked the court to tell them whether, if such delivery had been made, "did the custody and possession remain in the defendant, notwithstanding the agent of the plaintiff or trainer retained possession of her, and insisted on loading her as he thought best on the occasion, after having been requested by the agent of the defendant to place her under his control.”- Under the circumstances, as stated in the inquiry put by the jury, we think the court ought to have told the jury in plain terms that the plaintiff was not entitled to recover in this action.
And that the error of this instruction arose not merely from neglect on the part of the court, through inadvertence, to respond to the material portion of the jury’s inquiry, is shown from the concluding paragraph of the instruction, where the court tells the jury in substance that, although the management and control of the plaintiff’s horse at the time of the accident was claimed and exercised by the plaintiff’s own servants and agent, to whose charge it had been specially committed for that purpose, and that these servants and agent refused to follow the advice of the defendant’s agents *106 in the matter, the defendant was nevertheless responsible for the loss; and that the only way for the defendant to escape such responsibility would have been to refuse to transport the animal.
That this instruction was erroneous we think is clearly shown by comparing it with the authorities which have been quoted, as well as on principle.